William D. McKey et al., Defendants in Error, v. William B. Ester, Plaintiff in Error.

## Gen. No. 15,299.

BROKERS AND FACTORS—*when entitled to commissions.* If the employment of the broker is established and it appears that he was the procuring cause of consummating the transaction in question he is entitled to his commissions.

Error to the Municipal Court of Chicago; the Hon. F. L. FAKE, JR., Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed October 6, 1910. Rehearing denied October 17, 1910.

**Statement by the Court.** In an action of the fourth class in the Municipal Court plaintiffs filed the following Statement of Claim, verified by the affidavit of Fred A. Gates as the agent of the plaintiffs:

"Plaintiffs' claim is for broker's commission for renting store for defendant at 445 East Sixty-third street, Chicago, to F. M. Johnson and W. G. Morgan for theater as follows:

For period of two years, 5% of rental, $120.00
For period of three years, 1% of rental, 36.00

Total .......................... $156.00."

The jury returned a verdict for the plaintiffs for $60 damages, on which judgment was entered, and the defendant prosecutes this writ of error.

FRANK L. DELAY, for plaintiff in error.

P. H. BISHOP, for defendants in error.

MR. JUSTICE BAKER delivered the opinion of the court.

Gates, who made affidavit to plaintiffs' statement of claim, was called as a witness by the plaintiffs. The lease proved was a lease from Ester to Johnson for one year of the premises mentioned in plaintiffs' claim at $100 per month, with

a right of renewal for four years.   Defendant's counsel in his argument to the jury attempted to read from the statement and affidavit of claim and comment on them to the jury, but the court refused to permit him to do so.   This was error.   Howard v. Tedford, 70 Ill. App. 660; Holmes v. Jones, 121 N. Y. 461.   But we do not think that for that error the judgment should be reversed.

The principal controversy is as to the liability of defendant.   Caulfield, an employe of the plaintiffs, went with Johnson to Ester's house, introduced Johnson to Ester, and negotiations were at once begun between Johnson and Ester which resulted in the making of the lease in question.   There is no testimony tending to show that Johnson ever employed plaintiffs to obtain a lease of any premises for him.   He desired to lease premises in which to conduct a five cent theatre and went into plaintiffs' office several times to inquire whether they had such premises for lease, but did not employ or offer to employ plaintiffs to secure a lease for him.

The evidence for the plaintiffs tended to show that some time before Johnson went to Ester's house he asked Gates, the manager of plaintiffs' renting department, about the premises which he afterwards leased, in which was then a laundry; that Gates said he would inquire and let him know; that Gates then sent for Ester, who came to plaintiffs' office and said to Gates that he expected to lease to his present tenant, but if he did not he would be glad to have another tenant; that Gates told Johnson he could not get the store; that Ester afterwards went to plaintiffs' office and told Caulfield, another employe of plaintiffs, that he had not leased to his then tenant; that the next day Johnson came to plaintiffs' office and Caulfield told him that the lease of the laundry premises had not been closed, asked him if he would lease them, and Johnson said that he would for ten years at $75 per month; that Caulfield reported Johnson's offer to Ester, gave him Johnson's name, and it was agreed between them that Caulfield should bring Johnson to Ester's house; that Caulfield then over the telephone made with Johnson an appointment to meet him at plaintiffs' office and take him to Ester's house;

that pursuant to the appointment Johnson came to plaintiffs' office and Caulfield took him to Ester's house and introduced him to Ester; that Johnson finally offered Ester $100 a month for the place and give security to restore the premises to their then condition at the expiration of the term, and that he and Johnson then left; that the next morning as Caulfield was passing Ester called him into his house and said that he was satisfied to go into the deal if Johnson could give him proper security to put the building back in good shape, and then said, "I will have to pay you gentlemen a commission; how much will I have to pay you?" That Caulfield answered that he did not know plaintiffs' rates for such lease, that Gates would give him the particulars.

The testimony for the defendant was in several material matters in direct conflict with the testimony for the plaintiffs. Johnson testified that he went into plaintiffs' office several times to find if they had anything vacant suitable for a five cent theatre; that one day as he and one Morgan left plaintiffs' office they passed by the premises in question and saw the sign, "For Rent. Apply to 6628 Monroe Avenue, W. B. Ester;" that they went back to plaintiffs' office, told Gates that "he was not on to his job," and then went to the premises, examined them and started to go to Ester's house; that on the way they met Caulfield by accident and he said he would go with them and did so; that Johnson did not meet Caulfield by appointment. Ester testified that Caulfield did not call at his house before he called there with Johnson; that he did not say to Caulfield that he would have to pay commissions on the lease, but admitted that he did, on the morning after Caulfield called with Johnson, ask Caulfield what was plaintiffs' charge for commissions.

It is particularly the province of the jury to determine the weight and credit to be given to the testimony of witnesses. We cannot say that the jury might not properly find from the testimony that plaintiffs, through their employes, first called the attention of Johnson to the premises which he afterwards leased; that Johnson submitted an offer to take a lease of the premises for ten years at $75 per month to

Caulfield, plaintiffs' employe; that Caulfield reported the offer to defendant with the name of the person who made it; that defendant requested Caulfield to bring Johnson to defendant's house; that Caulfield did so, introduced Johnson to defendant and negotiations were then entered on which resulted in the making of the lease.

We think that from the evidence the jury might properly infer a contract of employment and a promise by defendant to pay to plaintiffs the usual commissions in case they should be the procuring cause of a lease to Johnson, and might also find that plaintiffs were the procuring cause of the lease in question. It follows from what has been said that in our opinion the verdict cannot be held to be against the evidence.

The record is, we think, free from reversible error and the judgment is affirmed.

*Affirmed.*