**Frank M. Whiston, Appellee, v. David Mayer Building Corporation, Appellant.**

**Gen. No. 44,643.**

68

Opinion filed March 16, 1949. Released for publication April 11, 1949.

WILSON & McILVAINE, of Chicago, for appellant; J. F. DAMMANN, W. S. BODMAN and THOMAS F. GERAGHTY, JR., all of Chicago, of counsel.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellee; JOHN D. BLACK, DOUGLAS C. MOIR and EDWARD J. WENDROW, all of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action to recover a real estate broker's commission. Verdict and judgment were for plaintiff in the amount of $6,300. This was one-half of the com-

mission he would have been entitled to under the customary rate. Defendant has appealed.

The defendant corporation in 1945 and 1946 owned the Goddard Building at the southwest corner of Wabash Avenue and Monroe Street, Chicago, Illinois. In August, 1945, plaintiff real estate broker brought a representative of the United Air Lines to the office of Richard Mayer, defendant's secretary. The possibility of a lease of space for United in the Goddard Building was discussed. Subsequently, on February 15, 1946, a ten year lease at a term rental of $630,000 was entered into between United and Defendant. Plaintiff's claim is based on this lease.

Plaintiff alleged that he was "advised" by United that it would be "interested" in leasing space in the Goddard Building; that he telephoned Richard Mayer, defendant's leasing officer and "advised" him that plaintiff was a broker and had a "prospect" for a lease of space in the Goddard Building; that plaintiff requested of Mayer that he "be permitted to act" as broker in the transaction; that he "desired to bring said prospect" to Mayer and "endeavor to negotiate" the lease; that after plaintiff divulged that United was "the prospect," Mayer "assented to plaintiff's request and told plaintiff to bring his prospect" to Mayer's office "for the purpose of attempting to negotiate a lease . . . ," and that plaintiff "persuaded" Merchant, United's authorized leasing agent, to accompany him to Mayer's office, where plaintiff introduced him to Mayer. The balance of the pertinent allegations have to do with what transpired in Mayer's office and subsequent developments leading to the lease. Defendant in its answer denied the contract with the plaintiff and alleged that he represented to Mayer that he was acting for United under an exclusive agency and that plaintiff in the office meeting repeated the representation. This allegation was denied in plaintiff's reply.

Plaintiff met representatives of United through a former employee of his who knew United needed loop building space. Subsequently, on July 3, 1945, plaintiff received a careful letter from United. It "would appreciate your making a survey" of space in a specified loop area. It "would express an interest" in a more closely specified area. A corner site "was preferable." Michigan Avenue was "not out of consideration." It was "anxious to proceed as rapidly as possible." It was "agreeable to having you act for us exclusively for a 3-month period." During that time it would refer inquiries "to your office." It is assumed "it is understood that we are under no obligation."

Plaintiff thereafter submitted several locations to United. These possibilities were eliminated. Plaintiff attended one of the conferences thereafter held by representatives of United. He was asked to secure information as to whether space was obtainable in the Goddard Building and at what price. August 7, 1945, plaintiff and Merchant of United were in conference at the Palmer House, adjoining the Goddard Building. Plaintiff telephoned to Mayer and asked "if I might call on him because I wanted to represent him in leasing this space to a client I had." Mayer asked who the client was and plaintiff, after obtaining permission to do so, told him. Mayer had said he was busy and had no time to discuss an "embryonic deal." Plaintiff asked permission to bring Mr. Merchant over right away, was granted said permission and went to Mayer's office. There plaintiff introduced Merchant to Mayer. The three of them discussed the available space, possibility of getting possession, rent and length of lease. Merchant said $60,000 annual rent was too high. The conference lasted about three-quarters of an hour. After the conference Merchant called his superior and was told to forget the matter. Plaintiff called Merchant the next day and was told that United was not interested "at the moment." Plaintiff called Merchant a number of times thereafter. He called

Mayer within the week. Mayer was not in and plaintiff left his number but the call was not returned. Plaintiff called Merchant "intermittently" for several months and each time was told the price was too high and that United was not interested in further negotiations. He last talked to Merchant "in January, 1946." January 30, 1946 he learned of the lease and wrote defendant making his claim for commission. This suit followed.

At the outset, we are of the opinion that plaintiff's complaint and his proof at the trial do not support the theory that he was a middleman. Middleman situations are exceptional and their character should appear clearly. Mechem on Agency (2nd ed.), Vol. 2, p. 2086. Plaintiff's complaint clearly alleges that he was the procuring cause. The theory of the middleman relationship is that the "go-between" has nothing to do with negotiations and consequently it is of no importance that both parties may pay him. *Montross v. Eddy*, 94 Mich. 100; *Jones v. Missouri Lumber & Mining Co.*, 166 Ill. App. 266. This exception to the general rule forbidding dual agency does not apply where there is an opportunity for violation of good faith. 14 A. L. R. p. 472, et seq.

The question is, do the facts recited hereinabove and the legal inferences drawn therefrom in plaintiff's favor give rise to an implied brokerage contract between plaintiff and defendant. This question was presented to the trial court by defense motion for judgment notwithstanding the verdict. The rule is that where there is any evidence tending to prove plaintiff's case and uncertainty arises as to the inferences that may legitimately be drawn from the evidence so that fairminded men may honestly draw different conclusions, the question is for the jury. *Plodzien v. Segool*, 314 Ill. App. 40.

Plaintiff told Mayer he wished to represent defendant in leasing this space. This was a general offer. We do not think that it is reasonable to infer more

from the permission granted than that Mayer was interested in talking about the offer when plaintiff brought his client over. In plaintiff's favor we shall infer that at the subsequent conference the general offer was particularized as to the terms at which defendant was willing to lease. Was this offer accepted by Mayer's conduct? Presumably plaintiff took part in discussions of the terms of a lease. Mayer did nothing to deter him, yet we cannot make the inference that Mayer impliedly accepted plaintiff's offer to represent defendant in making the lease with United.

█ █ The conference was of three cautious men. Plaintiff says that Mayer knew he was a real estate broker, that Mayer was an experienced lawyer and that accordingly Mayer knew, or should have known, that when he gave permission to plaintiff to bring over a prospect that if a lease developed later plaintiff would expect to be compensated. There is no force in this argument unless we assume what we have decided we cannot infer, i.e., that the permission to bring Merchant to Mayer gave rise to a contract of brokerage. There is no proof that when plaintiff was in Mayer's office he sought to have any express indication of Mayer's acceptance of an offer of brokerage. There is no proof from which we can infer that he discussed the lease from defendant's viewpoint or in its interest. An express contract is not necessary (*Goldstein v. Setka,* 195 Ill. App. 584; *Field v. Ingersoll,* 228 Ill. App. 457; 12 C. J. S. p. 32), but more has to be shown than appears here to establish an implied contract. We think that reasonable men could draw but one conclusion from the evidence favorable to plaintiff and the legal inferences drawn therefrom, and that is that at best the proof shows Mayer's permission for an informal exploratory conference.

We have read the cases cited by plaintiff, who admits that each case must stand on its own facts. The facts in *Libby v. Smith,* 293 Mass. 465 (200 N. E. 369) show

that plaintiff testified he asked the owner if the latter had any objection to a broker handling a lease, that the owner said "he would be glad to have plaintiff do it" and plaintiff said "all right" and defendant fixed a time for a meeting with the prospective tenant. In *Knotts v. Lake Shore & M. S. Ry. Co.*, 172 Ill. App. 550, the broker was encouraged by the owner to aid in a sale and was led to believe he would receive compensation. In *Purgett v. Weinrank*, 219 Ill. App. 28, the broker said he asked the owner what he would take for his farm and if he would let the broker sell it for him, that the owner said "$200 an acre," that the broker advertised the farm for sale and informed the owner who said "all right." In *Greenwald et al. v. Weinberg*, 174 Ill. App. 439, defendant knew plaintiff was negotiating a deal with the expectation that defendant would pay him a commission. In *McKey v. Ester*, 157 Ill. App. 168, the prospect came to plaintiff's office. Plaintiff induced the owner to come to his office. The owner indicated a willingness to lease if the present tenancy ended. The owner notified the plaintiff of the termination of the tenancy. The prospect made an offer to the plaintiff who communicated it to the owner and at the owner's request brought the parties together and the leases resulted. There was also testimony that defendant admitted he would have to pay plaintiff a commission. In *Field v. Ingersoll*, 228 Ill. App. 457, defendant told broker to see if he could not get a third person to cut down in price, that he later asked the broker how much he owed him and that he said he would not mind adding to the commission which plaintiff expected to get from the third person. These cases are distinguishable on their facts from the instant case.

We need consider no other points raised. The trial court erred in denying defense motion for judgment notwithstanding the verdict. For the reasons given the judgment for plaintiff is reversed and the cause

remanded with directions to enter a judgment for defendant, notwithstanding the verdict for plaintiff.

*Judgment reversed and cause remanded with directions.*

BURKE, P. J., and LEWE, J., concur.