Maurice Young, Plaintiff-Appellant, v. Fred A. Zimmer, Defendant-Appellee.

Gen. No. 49,589.

First District, Third Division.

March 4, 1965.

Israel Dordek and Jerome H. Torshen, of Chicago, for appellant.

Deming, Kelly & Truninger, of Chicago (David L. Truninger, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment against him entered by the court without a jury. The suit involved a claim for a real estate broker's commission for the sale of property owned by the defendant.

The only question presented to this court is whether the finding of the trial judge is contrary to the manifest weight of the evidence. The testimony in the case is conflicting on practically every material point, and for that reason we will herein summarize the testimony for the plaintiff and the testimony for the defendant rather than to attempt to set forth a statement of facts.

Plaintiff testified that he was a licensed real estate broker. That in 1961 he saw signs on the property located at 17–19 East Illinois Street, Chicago, Illinois, advertising the property "For Sale Or Rent." The signs listed a phone number. The plaintiff called this number and eventually spoke to the defendant and asked the defendant for information about the property. Defendant advised plaintiff that he would like to get $65,000 for the property, and the plaintiff told the defendant that he would see his client and let defendant know whether his client would pay $65,000. Thereafter, the plaintiff telephoned his client, who was not interested at the suggested price. The plaintiff again called the defendant and asked him if he would reduce his price and defendant stated that he would reduce his price to $60,000. The plaintiff passed this information on to his client, who still refused to buy. Thereafter, plaintiff advised the defendant that he had another client, however, who was willing to pay $50,000 for the property, but defendant said he would not accept that price. The plaintiff spoke to defendant in July, 1962 and asked defendant if he would accept

any less than $60,000. Defendant again said that he would not.

Plaintiff on July 12, 1962 called defendant and said he had a bona fide customer who would pay $55,000 for the property. Plaintiff testified that the defendant said, "Sell it." Plaintiff then asked defendant to confirm the conversation by letter and to state in the letter that he (defendant) would pay a brokerage commission on the sale; that the defendant said, "I will send you a letter"; that the plaintiff told the defendant to send the letter to "Maurice Young, Real Estate."

Under date of July 13, 1962, the defendant wrote to "Maurice Young Real Estate" as follows:

"Maurice Young Real Estate
18 West Chicago Avenue
Chicago 10, Illinois

 Subject: Property at 17–19 East
 Illinois Street

Gentlemen:

Confirming telephone conversations of yesterday, the writer will accept $55,000 for the property based on $15,000 down and the remainder in equal monthly payments over a period of three years, with an interest rate of 6% per annum.

This agreement to expire within thirty days from the date of this letter. Thank you.

 Very truly yours,
/s/ Fred A. Zimmer
 Fred A. Zimmer"

Thereafter, the buyer requested the legal description of the property. Plaintiff called defendant to ask for the legal description, and defendant told the plaintiff to call his attorney. Plaintiff obtained the legal description from defendant's attorney. Thereafter, an

option was negotiated covering a period of sixty days for a consideration of $2,000, with the understanding that if the option was not picked up the $2,000 would be forfeited, otherwise the $2,000 would be applied to the purchase price. The plaintiff did nothing further with regard to the consummation of the deal. He learned that the property was sold and in November, 1962, called the defendant and asked for his commission. The defendant stated, "I thought that you were part of the Kane Estate." (The Kane Estate was the purchaser.) Plaintiff then called the defendant's attorney, who advised him that the defendant would not pay a commission.

Plaintiff further testified that he at no time told the defendant that he was a part of the Kane Estate, and that the commission recommended by the Chicago Real Estate Board for a sale of property for $55,000 is $3,250.

Plaintiff further testified that after receipt of the letter from the defendant he did not call the defendant, nor did he object to the fact that there was no mention made of commission in the letter.

Plaintiff also testified that he was never inside of the property with the buyer; that he never advertised the property for the defendant; that he never had any listing from the defendant; that he advertised by way of "calls," and that he did not attend the closing of the transaction, or any conference between the attorneys when they were negotiating the option of sale. Although he talked to the defendant's attorney, he did not tell him that he was acting on behalf of defendant. Plaintiff did not ask the defendant's attorney to set up a commission in the contract of sale which was being prepared, and the first time he met the defendant was at a deposition hearing after the law suit was filed and many months after the transaction had been closed.

The manager of the purchaser's properties testified that the property in question was brought to his attention by the plaintiff.

The defendant, Fred A. Zimmer, testified that he was the owner of the property at 17–19 East Illinois Street until 1962; that he had a sign on the building offering it for sale; that he did not ever retain any real estate broker to advertise this property for sale. He recalled his first telephone conversation with the plaintiff; that plaintiff mentioned he was interested in buying the building at Illinois Street and wanted to know how much the defendant wanted for it. Plaintiff said that he was acting in the interest of a group.

Defendant further testified that the plaintiff said that they had bought buildings around that neighborhood before, and were now ready to buy some more buildings in the neighborhood on the near north side. Plaintiff wanted to know how much defendant wanted for the property and defendant quoted $65,000. Plaintiff at no time mentioned that he would look to the defendant for a commission if he sold the building. "The impression I got was he was buying it. There was never any discussion of commission."

He recalled the substance of the telephone conversation of July 17th because he confirmed it in writing, and he testified that after discussing the price with the plaintiff he finally told the plaintiff that he would take $55,000 net for the building, and that was rock bottom. The plaintiff asked him to confirm it and he did. The plaintiff did not at that time say anything regarding a commission. The plaintiff did not mention the buyer's name to him. The defendant never gave the plaintiff either written or oral authority to act as his agent or broker in the transaction. He never agreed in writing or orally to pay the plaintiff any commission on the sale of the building. He never accompanied the plaintiff to the premises, nor did he ever give the

plaintiff a key so that he could gain entrance to the building. He never gave the plaintiff any statement as to income or expenses of the building, and he did not remember if he ever gave the plaintiff the amount of the real estate taxes. In this conversation of July 12, 1962, he used the word "net"; he had bought and sold real estate before and he very definitely has an understanding of the meaning of the word "net." He admitted that the word "net" does not appear in his letter to the plaintiff. He did not know the plaintiff was a real estate broker. When he wrote the letter to the plaintiff at plaintiff's request, the plaintiff gave the defendant his name and said "real estate." That was the first time he knew plaintiff was in the real estate business.

He further testified that plaintiff represented himself as a buyer. He admitted on cross-examination that at a deposition hearing he had testified that plaintiff told him he had a client now ready to buy his property, but that he assumed plaintiff was a part of the purchasing group; that plaintiff was the only one who spoke to him about the property; that the plaintiff was the one who got the purchaser for the property, and that as far as the defendant now knows, the purchaser was the client of the plaintiff.

About the only uncontradicted statements in this record are that the plaintiff was a licensed real estate broker; that the defendant was the owner of the property in question; that the defendant transmitted his terms to the plaintiff; that a purchaser was obtained by the plaintiff, and that the sale was consummated.

 It is the settled law in Illinois that to create the relationship of agency between a broker and the owner of property, a contract of employment is necessary. However, no particular form is required in such contract and ordinarily all that is necessary is that

the broker act with the consent of his principal whether such consent is given by written instrument, orally, or by implication from the conduct of the parties. ILP Brokers Sec 22; Greenwald v. Marcus, 3 Ill App2d 495, 123 NE2d 139; Purgett v. Weinrank, 219 Ill App 28. Doss v. Kirk, 8 Ill App2d 536, 132 NE2d 49.

Plaintiff cites Carlson v. Marshall, 174 Ill App 438. This involved a suit by a real estate broker against the vendor of real estate for the recovery of a real estate commission earned on the sale of defendant's property. On page 439 the court said:

"Defendant knew that plaintiff and King, his employee, were conducting negotiations with Burkland *with the expectation that defendant would pay plaintiff for such services,* and by accepting such services he adopted their acts and became liable to pay plaintiff the usual and reasonable commissions for such services, which, in the absence of any agreement, would be $160." (Emphasis added.)

In the case before us the facts are in dispute as to whether the defendant knew that the plaintiff expected to be paid for his services or whether the defendant thought the plaintiff was a buyer or one of a group of buyers, and was acting not as an agent of the defendant but either on his own or for a group, of which he was one member. Even the testimony that the plaintiff was representing a client, standing alone, is not sufficient to create an agency between the plaintiff and defendant. The plaintiff could have been working for a client from whom the defendant might have inferred plaintiff was receiving compensation.

The plaintiff also relies on Knotts v. Lake Shore & M. S. R. Co., 172 Ill App 550, wherein the court said:

". . . yet, where it appears that the owner knows that the alleged volunteer is a broker, that he is endeavoring to effect a sale to a prospective buyer and expects to receive compensation for his services if successful, and where it also appears that with such knowledge on the part of the owner, the broker was encouraged by the owner to aid in the sale, and led by the owner to believe that he would receive compensation, a contract to pay compensation will be implied, if the sale is thereafter consummated through the efforts of such broker. Cases cited."

█ The foregoing case merely enunciates the rule that where the owner knows that the broker is endeavoring to effect a sale and expects to receive compensation for his services, and where the owner leads such broker to believe that he would receive compensation, the owner has impliedly approved the agency of the broker.

In the case before us there is no uncontradicted evidence that the owner led the plaintiff to believe that he would receive compensation, nor is there any uncontradicted evidence establishing defendant's knowledge that plaintiff expected to receive compensation from him. It is true that the plaintiff testified that at the time the owner agreed to sell for $55,000 the plaintiff asked the owner to send him a letter, and asked him to set forth in the letter that a commission was payable. The owner, on the other hand, testified that in the conversation with the plaintiff prior to the writing of the letter the owner had specifically told the plaintiff that he would accept $55,000 net, and denied that there was any conversation regarding the insertion in the letter of a notation concerning the payment of a commission. The evidence showed that the owner sent a letter which made no provision for

the payment of a commission, and upon receipt of the letter the plaintiff did not call the owner to inquire about the alleged omission. The plaintiff admitted that he talked to the owner's attorney, who was preparing the contract for sale, and that he did not tell the owner's attorney that he was acting on behalf of the defendant, nor did he ask the owner's attorney to reserve a commission in the contract.

In Bunn v. Smith, 90 Ill App 530 (an abst. opinion), the court held that even though a real estate agent was instrumental in finding a purchaser who afterwards purchased the property from the owner at the price the latter told him she would take for the property the agent was not entitled to a commission, unless he could show that he was employed by the owner to find a purchaser.

The evidence in this case as to employment is contradictory to say the least, and the evidence from which a contract of agency might be predicated, has been contradicted. While it is true that the plaintiff did obtain the buyer, it could have been done without the owner having any idea that the plaintiff expected to collect a commission from him. Taking the plaintiff's testimony alone, a contract of agency appeared to have existed, while defendant's testimony negates the existence of such contract. This case was heard by the court without a jury. The trial judge heard the testimony, observed the witnesses, their candor or lack of candor, and their demeanor while on the witness stand. The question of credibility was one to be determined by the court, and the rule of law is that where the testimony is contradictory, the judge who hears the case without a jury has the burden of passing upon the credibility of the witnesses, and the weight to be afforded their testimony, and the finding of the trial court will not be disturbed on appeal unless it

is manifestly against the weight of the evidence. Wilcox v. Andrews, 150 Ill App 27.

 Inasmuch as the question of the existence of any agency contract, either expressed or implied, was for the trial judge to determine, after having observed the witnesses and heard the evidence, and since we are of the opinion that the trial court's decision in this case cannot be said to be against the manifest weight of the evidence the judgment of the trial court will be affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.