Henry J. Lynch, Plaintiff-Appellant, v. Nachusa Hotel Corporation, an Illinois Corporation, Arnold V. Lund and James Donnellan, Defendants-Appellees.

Gen. No. 67–103.

Second District.

March 22, 1968.

Mathew P. Cicero and John T. Beynon, of Rockford, for appellant.

Reno, Zahm, Folgate and Skolrood, of Rockford, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The plaintiff is a licensed real estate broker who filed this suit against the defendant corporation, and certain of its agents, to recover a commission of $16,200. After a bench trial resulting in a judgment in favor of the defendants, the plaintiff has filed this appeal.

The singular issue is whether the trial court found against the manifest weight of the evidence by ruling

that no commission was due. We are of the opinion that it did not, based upon the conflicting evidence.

There was no written agreement. The plaintiff's claim is based on a series of conversations relating to the eventual sale and purchase of the Nachusa House Hotel in Dixon, Illinois. The testimony is in conflict as to whether certain of the conversations took place as well as to what was said.

The plaintiff testified in substance that he was a licensed real estate broker who, in September of 1962, was having a conversation with one Walter Williamson, the ultimate purchaser of the property in question. Williamson asked the plaintiff if this property was for sale, whereupon the plaintiff went to the hotel in Dixon and spoke with the defendant Lund, the general manager for the owners, in the presence of the defendant Donnellan, Lund's assistant. When asked by the plaintiff if the hotel were for sale, Lund stated that it was not on the open market although it might be for sale to a responsible party. The plaintiff then disclosed the name of Walter Williamson, and Lund responded that he knew Williamson and his capabilities and would be glad to talk to him. The next day the plaintiff called Lund and told him that he had talked with Williamson and would arrange an appointment at a later convenient time. According to plaintiff there were a number of subsequent conversations with Lund as to a plat of the property and business figures, and plaintiff relayed such information to Williamson. Plaintiff testified that on November 19, 1962, he, Williamson, Lund and Donnellan conferred at the hotel. They hadn't arrived at a price and the conversation was general as to what property was to be included.

Mr. Lund mentioned that $450,000 was invested in the hotel. Plaintiff and Williamson looked over the property on December 1, 1962, and on April 3, 1963, the plaintiff, Williamson and Lund had lunch at the hotel and again

251

looked at various rooms. On May 4, 1963, plaintiff was given sales and profit and loss information which he noted. The plaintiff testified that at that time he asked Lund for a letter of authorization to complete the deal with Williamson. Lund supposedly said he could arrange it, but first had to be sure that Williamson was really interested in the price "we are talking about now." Plaintiff arranged to bring Williamson down "to negotiate" and he, Lund and Williamson met on May 10, 1963, at Lund's house. Lund mentioned the figure of $400,000, but Williamson said he would not be interested anywhere near that price. Williamson indicated that $250,000 would be a more realistic price, and even that would have to include additional real estate.

On May 13, according to plaintiff's testimony, he talked to Lund and Donnellan on the phone and told them he thought Williamson would be interested in $250,000, and that the final price would end up probably in the vicinity of $300,000. On May 27th, plaintiff asked Lund to give him a gross figure "including commission," and plaintiff remembers Lund saying "they would think it over." (On cross-examination, however, plaintiff stated that Lund made no response to his request for a commission.)

Plaintiff testified to a number of other conversations between himself and Williamson, and between himself and Lund and Donnellan, between June, 1963, and January, 1964, which did not indicate any change by either party in the asking and selling price. There was no conversation thereafter except for an inquiry by plaintiff when he was passing through Dixon, at which time he was told by Lund "that they weren't getting anywhere."

Plaintiff also testified that he had had several prior dealings where Williamson purchased property—all of considerable size, and that he had been paid a commission on each of these transactions by the sellers.

Lund and Donnellan testified that at the original meeting in September, 1962, the plaintiff either said or implied that he and Williamson were associated, and both testified that they understood plaintiff to be acting for Williamson. Lund testified that plaintiff never mentioned a commission to him and never asked to represent the sellers. Donnellan concurred.

Lund, Donnellan and Williamson each further denied in their testimony being present at the meetings testified to by plaintiff between September 30, 1962, and May 10, 1963. In fact, Lund and Donnellan even denied the conversations testified to by the plaintiff after May 10, 1963.

The testimony conflicted as to the initial asking price; the defendants' proof was that the first price was either $450,000 or "close to $500,000," while the plaintiff had testified that the original figure was $400,000. In any event, Williamson testified that when he heard the asking price, and how much land was included, he "wasn't interested."

Williamson further stated that he and the plaintiff only discussed the Nachusa matter once to any degree, and this a few days after the luncheon meeting in May, 1963. After that date Williamson's conversations with the plaintiff regarded the purchase of other properties in Elgin and Beloit. In early 1966 Williamson was in Dixon on oil business, saw Donnellan, and negotiations again began for the purchase of the Nachusa Hotel and considerable additional property, concluding with a contract of sale dated March 16, 1966 for $300,000.

While the testimony was conflicting on each issue in the case, that of Williamson was in substantial accord with that of Lund and Donnellan. The plaintiff's testimony was generally uncorroborated.

In support of his appeal, the plaintiff argues that the facts show a contract whereby the defendants become obligated to pay him a commission. He further relies upon the rule that a broker's commission is not defeated merely because the principals pursue direct negotiations. Finally, he urges that the defense of abandonment is without merit because even if he had abandoned all hopes for a sale, which he denies, certainly Williamson did not.

In granting judgment for the defendant, the trial court necessarily believed that the defendants had never accepted the plaintiff as a broker with the understanding, express or implied, that they would bear the cost of his commission, or, if such an agency did in fact exist, that it had been terminated by abandonment.

Either finding would have justified a dismissal of the complaint, and it is our opinion that there are sufficient credible facts in the record to warrant either finding. The prior dealings between the plaintiff and Williamson, the consistent testimony of the defendant that the plaintiff never discussed his commission with them, and that the plaintiff led them to believe that he was acting on behalf of Williamson, as well as the fact that it was the plaintiff who sought out the defendants with the knowledge that Williamson was interested in acquiring the property, taken together, would surely justify the conclusion that there was no meeting of the minds whereby the plaintiff would be acting for—and compensated by—the sellers. This was not overcome by Lund's testimony on cross examination that Williamson told him some time in 1964 that the plaintiff was not acting for Williamson. Young v. Zimmer, 56 Ill App2d 298, 303–306, 206 NE2d 281 (1965).

Similarly, the unvarying testimony of the defendants and Williamson as to the cessation of negotiations for a

considerable period of time, which were resumed without the solicitation of the plaintiff, would justify the finding that the parties had voluntarily abandoned their relationship, and that therefore the plaintiff was not the procuring cause of the ultimate sale, assuming one had existed. Stone v. Moloney-Bennett Belting Co., 159 Ill App 366–370 (1911).

■ Notwithstanding that the plaintiff's testimony challenged most of that offered by the defendants, we cannot say that the trial court's finding was contrary to the manifest weight of the evidence. The court heard the testimony, observed the witnesses, their candor and lack of candor, and their demeanor while on the stand. The question of credibility, therefore, was one to be determined by the court. Young v. Zimmer, supra, 306.

Two additional facts tend to support the trial court's decision that the plaintiff was not representing the sellers, or that, in any event, he was not the procuring cause of the sale. First, the plaintiff amended his complaint prior to trial by adding a verified count (later voluntarily dismissed) which prayed for judgment against the purchaser, Williamson, and which alleged, inter alia, that "Walter A. Williamson employed the plaintiff in his capacity as a Real Estate Broker in order to purchase the Nachusa House." Second, the fact that the ultimate sale included considerable property in addition to that originally discussed suggests that the plaintiff was not the procuring cause of the transaction which was in fact consummated, particularly since the plaintiff, even by his own testimony, was in no way involved in the sale of this additional property. Parenthetically, it is further noted that Williamson acquired the post office site in Dixon at the same time—a property which he had previously bid upon and lost to the sellers—in the amount of the seller's bid plus subsequent taxes.

255

In a final effort to show that the defendants themselves regarded the plaintiff as having earned a broker's commission, the plaintiff points to paragraph 19 of the final contract, which provides in part:

"It is understood that the purchaser will deliver at closing a complete release signed by Henry (Hank) Lynch of Rockford releasing Seller from any commission payable on account of this sale. If the Purchaser fails so to do he will indemnify Seller from any commission payable to Henry (Hank) Lynch on account of this sale."

We cannot agree that the inclusion of this paragraph enhances the plaintiff's rights, nor can we say that this provision should have changed the trial court's decision. The draftsmen of the contract of sale were doubtless aware of plaintiff's desire to collect a commission, and they covered the question by including the above language. To anticipate a challenge is not to admit that it is well founded. In any event, the fact that the provision throws the onus of plaintiff's threat upon the purchaser would indicate that as far as the principals were concerned, the plaintiff was more likely the purchaser's representative than the seller's. The liability of the purchaser for the commission, however, is not here in issue since the plaintiff voluntarily moved to dismiss the purchaser, Williamson, from these proceedings upon the close of proofs.

The judgment of the trial court is affirmed.

Judgment affirmed.

DAVIS and MORAN, JJ., concur.