**INDUSTRIAL AMERICA, INCORPORAT-
ED, Plaintiff,**

v.

**MINNESOTA MINING & MANUFACTUR-
ING CO. et al., Defendants.**

Superior Court of Delaware,
New Castle.

May 8, 1973.

David A. Drexler, of Morris, Nichols,
Arsht & Tunnel, Wilmington, for plaintiff.

B. Wilson Redfearn, of Tybout, Red-
fearn & Schnee, Wilmington, for defend-
ants.

TAYLOR, Judge.

Plaintiff sued defendants claiming a fee
in the amount of $67,500 as a broker's fee
in connection with the acquisition of Wag-
ner Sign Service, Inc. [Wagner] by de-
fendant National Advertising Company
[National], a wholly owned subsidiary of
Minnesota Mining & Manufacturing Com-
pany [3M]. Defendants have moved for
summary judgment on two grounds: (1)
that an indispensable party to plaintiff's
claim has not been joined, and (2) that
there was no contractual relationship be-
tween plaintiff and defendants and, there-
fore, there was no right to a broker's fee.

For purposes of defendants' motion for summary judgment, the pleadings, evidentiary facts and inferences must be considered in the light most favorable to plaintiff. Hazewski v. Jackson, Del.Super., 266 A.2d 885 (1970).

Plaintiff is a corporation which functions as an industrial broker, serving the role of bringing buyers and sellers of businesses together for the purpose of sale, acquisition or merger of the business. The principal officer of plaintiff is Millard B. Deutsch [Deutsch].

Plaintiff's version of the facts is as follows: In May, 1970, Deutsch was informed by G. R. Stewart [Stewart], a broker, that he had information that Wagner might be available for sale. Deutsch ascertained the names of the principal owners of Wagner. He also learned from Frank Mason [Mason], an officer of Continental Illinois National Bank [Continental], that National might be a potential acquirer of the business. Deutsch wrote to the president of Wagner and indicated that he had a major corporation which might be interested in acquiring Wagner. In that letter, Deutsch indicated that he would look to the buyer for payment of broker's commission. Wagner's response was that it had entered into an exclusive six month listing with another broker. In August, 1970 Stewart and Deutsch attended a meeting with officers and certain stockholders of Wagner, and Deutsch was authorized to propose to 3M the sale of Wagner for $1,700,000 plus broker's fee. Deutsch met with officers of National on September 4, 1970 and presented the proposal. A further meeting was held on September 15, 1970. On October 26, 1970 an officer of National informed Deutsch that 3M was unwilling to pay the asking price. Deutsch requested a counter-offer. On November 16, 1970 Deutsch, upon authorization from the Wagner principals, reduced the asking price from $1,700,000 to $1,350,000 plus 5% broker's fee. On December 1, 1970 an officer of Wagner informed Deutsch that the matter was moving forward again and

looked favorable to close before the end of the year. On December 14, 1970 an officer of National informed Deutsch that the parties were in the process of wrapping up the deal but that the broker's fee was a "hang-up". He requested that Deutsch look to the Wagner principals rather than 3M for payment. Deutsch agreed to this on the conditions that (a) the provision for payment of the broker's fee be made an express term of the 3M-Wagner agreement, (b) a copy of the agreement be supplied to Deutsch, (c) Deutsch be invited to attend the closing, and (d) the fee be actually paid. The National official acquiesced. On the following day Wagner's president called Deutsch, indicating that the final price was $1,250,000 and asked Deutsch to reduce his fee to $50,000. Deutsch agreed. The closing took place on December 31, 1970; Deutsch was not invited to the closing; the agreement did not include a provision for Deutsch's commission; Deutsch was not furnished a copy of the agreement; and Deutsch was not paid the fee. At an early stage in the negotiations, Stewart agreed with Deutsch that Deutsch would pursue the negotiations as the sole broker and that if a broker's fee was earned, Deutsch would pay Stewart a percentage of the fee. Initially, Continental had expected to participate in the broker's fee. However, in 1972 Continental renounced its claim to participate in the fee.

Two issues are raised by defendants' motion for summary judgment: (1) that plaintiff cannot recover because it had no contract with defendants, and (2) that an indispensable party who participated in the brokerage arrangement with plaintiff has not been joined in this action.

With respect to the contract issue, defendants' version of the negotiations which led to the sale differs from those of plaintiff, particularly as to the issue of the broker's commission. Since there is an issue of fact, in passing upon defendants' motion for summary judgment, it is only necessary to determine whether a cause of action ex-

ists, accepting the evidence and inferences most favorable to plaintiff. Jones v. Julian, Del.Supr., 195 A.2d 388 (1963); Smith v. Berwin Builders, Inc., Del.Super., 287 A.2d 693 (1972); Plant v. Catalytic Construction Co., Del.Super., 287 A.2d 682 (1972).

Defendants point out that the relationship between plaintiff and defendants was created in Illinois and is governed by the law existing in Illinois, citing Williams v. Warner, 260 U.S. 201, 43 S.Ct. 18, 67 L.Ed. 21 (1942). Plaintiff does not argue to the contrary.

■ Defendants further contend that there must be a contract relationship between a principal and a broker in order to entitle the broker to a commission. A contract may be expressed or implied according to the nature of the dealings of the parties. Graff v. Whitehouse, 71 Ill.App. 2d 412, 219 N.E.2d 128 (1966); Young v. Zimmer, 56 Ill.App.2d 298, 206 N.E.2d 281 (1965).[1]

If plaintiff's version of the facts is accepted, the earlier proposals to 3M that sale would be based on a stated price plus broker's commission to be paid by 3M and the subsequent negotiations followed by the proposal that Deutsch look to Wagner for payment could give rise to the conclusion that a contractual obligation existed between 3M and Deutsch. Similarly, if plaintiff's evidence concerning the conditional relinquishment of its rights to look to 3M for the commission be accepted, the conclusion could be reached that 3M's contractual obligation to pay commission upon the consummation of the contract remained.

■ Accordingly, it cannot be said that plaintiff's factual contentions, if believed,

with inferences drawn most favorably to plaintiff, do not make a sufficient case for plaintiff. Cf. Ebersole v. Lowengrub, Del.Super., 4 Storey 463, 180 A.2d 467 (1962). The motion for summary judgment on this ground is denied.

The second issue is whether an indispensable party is missing. Defendants point out that there was an agreement between Deutsch, Stewart and Continental to divide the brokerage fee earned in the acquisition of Wagner by National.

■ The purpose of the "indispensable party" rule is to assure that a litigant can have his rights and liabilities determined at one time without the likelihood of renewed litigation at another time or place involving another claimant whose rights are intertwined with those of the present claimant. 3A Moore's Federal Practice 2220, § 19.07(1).

■ If there appears to be any legal foundation for a claim by Stewart against these defendants for compensation growing out of the alleged brokerage claim which is the foundation of this suit, defendants are entitled to the protection of having Stewart joined as party litigant, or other appropriate protection. If Stewart has any right to compensation arising independently of plaintiff, such is a matter running directly between Stewart and defendants. In such case, Deutsch is undoubtedly entitled to interplead Stewart under Civil Rule 22, Del.C.Ann. Plaintiff should not in such case be required to take the burden of joining Stewart.

Here, it is contended that Stewart has a right to join in the brokerage claim for which Deutsch is suing.

The landmark formula for determining indispensability of a party was announced

---

1. McDermott v. Morton, 342 Ill.App. 446, 96 N.E.2d 633 (1950), cited by defendants for a stricter rule, merely held that the broker had not proved that he "was retained by owner to sell premises or that sale was effected through broker's ef-forts". Similarly, Forney v. LaSusa, 8 Ill.App.2d 555, 132 N.E.2d 55 (1956), cited by defendants is not helpful since in that case the broker never communicated with the owner his expectation to be compensated by the owner.

by the United States Supreme Court in Shields v. Barrow, 58 U.S. 130, 17 Howard 130, 136, 15 L.Ed. 158 (1854), where it was declared to apply to persons having "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." In later years, however, the Supreme Court has recognized that "there is no prescribed formula for determining in every case whether a person is an indispensable party." Niles-Bement-Pond Co. v. Iron Moulders' Union Local # 68, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145 (1920). 2 Federal Practice and Procedure, Barron and Holtzoff (Wright Ed.), 97, § 512 cites four questions which have been used as a test:

"(1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?"

A negative conclusion as to any one of these questions constitutes the absent party as an indispensable party.

Turning to specifics, an early case in this state held that parties to a contract, whether joint or as partners, must join for the enforcement of the contract. Cannon v. Maull, 4 Har. 223 (1845). This same principle has been applied in the case of joint obligees and in the case of partial assignees, 2 Federal Practice and Procedure, Barron and Holtzoff (Wright Ed.), 102, 103, § 512, and in the case of a partial subrogee, State of Maryland v. Acme Poultry Corp., D.Del., 9 F.R.D. 687 (1949).

In this case, the record shows that Stewart had participated in the early stages of the transaction with Wagner and that Stewart and Deutsch had agreed that Stewart would receive a percentage of the ultimate commission. It should be noted also that Frank Mason writing for Continental forwarded an instrument to Deutsch indicating that Continental Bank does not intend to become a party to the present suit and stating "We waive all rights and claims to any fees or commissions due us regardless of the outcome." In the light of this waiver, the issue before the Court now is the relationship of Stewart and Deutsch.

Defendants are entitled to the protection that any judgment rendered in the action by Deutsch will resolve any claim by Stewart growing out of the transaction in litigation in this case. Accordingly, either Stewart must be made a party to this action or defendants must be afforded some alternative form of protection. Defendants seek to dismiss the suit for failure to join Stewart. The Court declines to take this action at this time. Cf. Rule 19(b).

Plaintiff is granted leave to take steps to join Stewart as a party litigant within 30 days from the date of this Order. In the event plaintiff fails to meet this requirement, it shall submit to the Court within 15 days thereafter an alternative proposal to provide for defendants the protection mentioned above.

It is so ordered.