MARSHALL BENNETT et al., Plaintiffs-Appellants, v. H. K. PORTER COMPANY, INC., Defendant-Appellee.

(No. 56996;

First District (5th Division)—July 27, 1973.

*Rehearing denied August 27, 1973.*

Donald L. Johnson, of Curtis, Marks & Katz, of Chicago, for appellants.

Sydney G. Craig, of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

We allowed plaintiffs' petition for leave to appeal from an order vacating a $14,942.19 jury verdict in their favor and ordering a new trial. At the same time, the court denied defendant's motion for judgment in its favor notwithstanding the verdict, and defendant seeks such a judgment from this court without remand.

The primary issue is whether plaintiffs, real estate brokers, had been employed by defendant to find a suitable sublessee for defendant and, if so, then secondarily, whether plaintiffs may recover damages equal to the commission they would have received from a sublessee proposed by plaintiffs, had defendant not refused to accept the tendered sublease.

In October, 1966, defendant, with approximately 15 years remaining on its lease, attempted to vacate its leased property at 2567 Greenleaf Avenue, Elk Grove, Illinois, by contacting various real estate brokers who were to find a subtenant for the property. There was no request by defendant that plaintiffs act as broker for defendant, nor did plaintiffs request such relationship from defendant. Thus, though not specifically

solicited by defendant, plaintiffs learned of defendant's intent to vacate. On October 25, 1966, plaintiff Bennett visited and inspected the premises, and received from a Mr. Fleming, defendant's employee, measurements and conditions of the proposed sublease. Bennett asked if he could show the property for possible subleasing, and Fleming answered that he could. The next day, October 26, 1966, plaintiff Kahnweiler called Fleming to arrange a showing of the property to Robert Meythaler and other personnel of Playskool Manufacturing Company on the following day. Because Fleming was not at the building at the time of the visit, a few days later he gave Kahnweiler more information about the space and informed him that he was only authorized to show the property and give out information about it. Kahnweiler was referred to Vincent Hauck at defendant's Pittsburgh headquarters. On November 3, 1966, following their phone call, Kahnweiler sent a telegram to Hauck advising him of the interest of Playskool in defendant's space. On November 8, 1966, after several phone conversations between Kahnweiler and Hauck, a letter of intent was sent by Meythaler of Playskool to plaintiff and then to defendant setting forth the terms of a proposed sublease, specifically stating that Playskool and not defendant would pay plaintiffs' commission. On November 11, 1966, Kahnweiler again spoke with Hauck who had received the letter and turned it over to his attorneys for processing. There followed for the next six days an exchange of phone calls between Hauck and Kahnweiler which changed or clarified minor terms of the proposed agreement. On November 18, 1966, plaintiffs received a telegram from defendant rejecting the offer of Playskool as a subtenant. Defendant claimed an essential condition of its proposal had not been met, e.g., the release of defendant from the conditions of the lease. Other brokers, as well as plaintiff, testified that defendant had never made its release from the lease a condition of acceptance. The jury returned a verdict in favor of plaintiffs and assessed damages in the amount of $14,942.19. The trial judge set aside the verdict and ordered a new trial. From that order plaintiffs appeal.

OPINION.

■■ Plaintiffs contend that the trial court erred in entering the order appealed from because the jury had properly determined that an implied contract existed between plaintiffs and defendant which entitled plaintiffs to damages when defendant refused to accept a tendered tenant ready, willing, and able to take the premises on defendant's terms. Plaintiffs assert that the facts imply an agreement with defendant to enter into an agreement with a suitable third party who, when the transaction was completed, would pay plaintiffs' commission. This principle would not require that defendant had agreed to pay plaintiffs a commission,

but simply that it had employed them as brokers to find a subtenant on defendant's terms. However, not only do the facts fail to support this claim, but it is undisputed that plaintiffs, having worked with Playskool in the past, initiated contact with defendant knowing of Playskool's interest in that type of space. The day after Bennett talked with Fleming, Kahnweiler contacted Meythaler who wanted to see the space the next day. Furthermore, from the time initial contact was made until the time defendant rejected plaintiffs' offer, nothing in the record discloses that plaintiffs were representing defendant. Nor is there anything to indicate that defendant ever engaged plaintiffs to do any work on their behalf. In fact, plaintiffs worked closely with Playskool and assisted them in their negotiations with defendant by working out details of the proposed agreement with Fleming in Chicago and Hauck in Pittsburgh, and even assisted in the draft of Playskool's letter of intent, providing their own cover letter requesting affirmative action by defendant. At no time was there any suggestion that plaintiffs were either representing both parties to the transaction or had become defendant's broker. (See *Whiston v. David Mayer Bldg. Corp.*, 337 Ill.App. 67, 84 N.E.2d 858.) Plaintiffs obviously had an interest in the negotiations and were willing to do what was necessary to insure that the sublease was signed. However, in the absence of employment as a broker, the tendering of a ready, willing, and able subtenant was merely an offer which defendant was free to reject with or without cause. When, initially, defendant was contacting brokers to find a subtenant, plaintiffs were not called. Instead, plaintiffs initiated discussions with defendant, knowing that Playskool was interested in moving to new space. Fleming told plaintiffs that his authority was limited to showing the space and stating defendant's terms, and that he had no final authority to enter into a sublease on behalf of defendant. He also told a Mr. O'Leary, one of plaintiffs' employees, that defendant would not pay any brokerage commission, a practice which O'Leary thought unusual in the Chicago area. When Playskool decided to take the space, its chairman, Meythaler, contacted plaintiffs, who then talked to Hauck, defendant's representative in Pittsburgh. The numerous phone conversations between Hauck and Kahnweiler resulted in a letter of intent sent to plaintiffs from Playskool which was accompanied by a covering letter from plaintiffs to defendant urging acceptance of the offer. From those letters it seems clear that plaintiffs knew they were making an offer only and were doing so on behalf of the third party, Playskool. (See *Turek v. Opava*, 192 Ill.App. 270, and *Day v. Hale*, 50 Ill.App. 115.) The letter of intent drafted by Kahnweiler, signed by Meythaler on behalf of Playskool, and dated November 8, 1966, contained the following language: ·

"This is your authority to offer on our behalf to sublease the premises known as 2567 Greenleaf Avenue, Elk Grove Village, Illinois * * *. Our intention to lease the premises is subject to a review of the present lease documents between H. K. Porter & Company and the owner of the building and an approval by legal counsel for both ourselves and H. K. Porter and Company of any lease instrument or sublease instrument between ourselves and H. K. Porter & Company.

* * *

This letter of intent shall be open and valid until 5:00 P.M., Central Standard Time, on Thursday, November 17, 1966; and if not accepted in writing by that time by H. K. Porter and Company, it shall become null and void and our $7,000.00 check shall be promptly returned."

Thus it is apparent that plaintiffs were acting on behalf of Playskool and that Playskool recognized that defendant had the power to reject the offer outright, which they did, or simply let it lapse by waiting until after the deadline for acceptance.

■■■ In the absence of an expressed written agreement between the parties, an implied contract may be created if the broker acts with the consent of his principal. (*Korman v. Wanen Catalpa Apartments, Inc.*, 20 Ill.App.2d 598, 156 N.E.2d 621.) Whether the broker has his principal's consent must be determined from the facts and circumstances of each case. It has been held, however, that when the principal merely allows the broker to take part in negotiations concerning the lease, he has not thereby created an implied brokerage agreement. (*Whiston v. David Mayer Bldg. Corp.*, 337 Ill.App. 67, 84 N.E.2d 858.) A stronger denial of the existence of a brokerage agreement is presented when the broker never represents the principal, the principal never accepts the broker as his agent, and the principal refuses to pay the broker's commission even though the broker has played a significant part in the transaction. See *Lynch v. Nachusa Hotel Corp.*, 93 Ill.App.2d 250, 235 N.E.2d 260 and *Chapman v. Illinois Midwest Joint Stock Land Bank of Edwardsville*, 302 Ill.App. 282, 23 N.E.2d 744.

■■■ From the foregoing we conclude that the manifest weight of the evidence demonstrates the nonexistence of either an express or implied brokerage agreement between plaintiffs and defendant. Furthermore, since, according to the letter dated November 8, 1966, Playskool's offer could be terminated either by lapse of time or defendant's rejection, the evidence clearly established that defendant did not act improperly when it rejected the offer of plaintiffs' tendered tenant and, as a consequence, cannot be held liable in damages for plaintiffs' lost commission.

■■ Plaintiffs also argue that it was error for the trial judge to order a new trial when his decision did not relate to questions of fact but only to confusion on a point of law. At the hearing on defendant's motion for a new trial, the judge stated: "I have cases going all ways in this, and it's got me. It is one case that I can't—I am having a hard time making up my mind. * * * I am going to let the Appellate Court decide." Since a new trial would not clear up any confusion on the questions of law involved, it is an inappropriate form of relief, and granting the motion was an abuse of discretion under those circumstances. (See *Randall v. Randall*, 281 Ill.App. 169.) It is interesting to note in this regard that neither party is seeking a new trial.

The confusion plaintiffs refer to is manifest in the giving of an instruction which may well have misled the jury to the point of influencing their verdict. This instruction which had been tendered by plaintiffs stated:

> "You are instructed that it is not necessary for the plaintiffs to recover in this case that there be an agreement between the plaintiffs and the defendant that the defendant would pay the plaintiffs' commission. The plaintiffs are entitled to recover if you find from the evidence that they produced a tenant ready, willing and able to take the premises in question on the terms listed by the defendant and that the defendant thereafter failed to complete the transaction."

■■ Even though another instruction states that plaintiffs were required to prove the existence of an employment agreement, this unqualified statement as to when plaintiffs might recover was importantly erroneous in this case and would justify the granting of a new trial on motion of defendant, but no such request was made nor is it now being asked for.

■■ In conclusion, therefore, the order setting aside the verdict is affirmed, the granting of a new trial is reversed, and (although there was no cross appeal), the cause is remanded with directions to allow defendant's motion for judgment in its favor notwithstanding the verdict. Supreme Court Rule 306(a)(2); Ill. Rev. Stat. 1971, ch. 110A, par. 306(a)(2).

Affirmed in part, reversed in part and remanded with directions.

DRUCKER, P. J., and LORENZ, J., concur.