C. Robert Lazerus, and Mortgage Corporation, Plaintiffs-Appellees, v. McCann-Erickson, Inc., Defendant Below, and 318 South Michigan, Inc., Defendant-Appellant.

Gen. No. 45,912.

Opinion filed January 14, 1953. Released for publication January 30, 1953.

WILSON & McILVAINE, of Chicago, for appellants; CALVIN F. SELFRIDGE, W. S. BODMAN, and DAVID G. CLARKE, all of Chicago, of counsel.

GALE L. MARCUS, of Chicago, for appellees.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Defendant, 318 South Michigan, Inc., a corporation, appeals from a judgment in the sum of $1,560 entered on the finding of the court in an action by plaintiffs to recover a real estate broker's commission for services rendered in procuring an option to lease certain premises in the building owned and operated by the 318 South Michigan, Inc. to the defendant McCann-Erickson, Inc. The trial court found in favor of defendant McCann-Erickson, Inc. and entered judgment accordingly. Since the defendant McCann-Erickson, Inc. is not involved in this appeal, the designation "defendant" will hereinafter refer to 318 South Michigan, Inc.

The Diamond Match Company occupied the third, fourth and fifth floors of defendant's building under a lease expiring October 31, 1954. McCann-Erickson, Inc. were in possession of the sixth, seventh and eighth floors of defendant's building under the terms of a written lease which terminated on May 31, 1956. In April 1950 plaintiffs were retained by the Diamond Match Company to sublease the fifth floor of their premises. This is the space here in controversy. Mc-Cann-Erickson contemplated enlarging their quarters in defendant's building.

Shortly after plaintiff Lazerus and Homer Havermale, vice president of McCann-Erickson, Inc., started negotiating in April of 1950 with the Diamond Match Company, Lazerus informed Walstein C. Findlay, president of the defendant, by telephone of the nego-

tiations between McCann-Erickson, Inc. and Diamond Match Company to sublease a portion of its premises. This is the first time Findlay learned that McCann-Erickson, Inc. was seeking additional space. During this telephone conversation Findlay was told by Lazerus that he had been authorized by Diamond Match Company to sublease the premises in question to McCann-Erickson, Inc. for the unexpired portion of the lease to the Diamond Match Company; that McCann-Erickson, Inc. would be interested in leasing the premises provided it could secure them for the period commencing October 31, 1954 to May 31, 1956, the latter date being the time when the McCann-Erickson leases expired.

According to plaintiffs' evidence Findlay told Lazerus "that I should not tell them [McCann-Erickson, Inc.] he would not make such a lease but that he would prefer to make a lease for a longer term and I should endeavor to negotiate with them for a period beyond May 31, 1956 not only for the fifth floor but also on the sixth, seventh and eighth floors in which they were the tenant."

Afterwards Findlay had a discussion with Havermale relative to the subletting of the premises, during which Havermale asked Findlay to extend the terms of the subleased premises of the Diamond Match Company to coincide with the expiration of the McCann-Erickson, Inc. leases. In order to sublease these premises the Diamond Match Company, under the terms of its lease, was required to obtain the consent of the defendant. After defendant consented to the Diamond Match Company subletting the premises in controversy to McCann-Erickson, Inc., it gave McCann-Erickson, Inc. an option to lease the space involved for that period of nineteen months between the termination of

113

the Diamond Match Company's lease and the leases held by McCann-Erickson, Inc.

The broker's commission claimed by plaintiffs is based on services alleged to have been rendered defendant in procuring a tenant for the premises during this period of nineteen months. The trial court, as shown by the record, rested its decision on the ground that the option granted McCann-Erickson, Inc. by defendant was the equivalent of a lease for that period.

The basic question presented is whether plaintiffs have sustained the burden of proving a contract of employment. At the time defendant purchased the building Lazerus obtained a loan for defendant, and thereafter virtually leased all the space in defendant's building.

Plaintiffs argue in effect that a contract of employment in the present case could be implied from the past relationship of the parties. Plaintiffs admit that Lazerus made no request of Findlay to act as defendant's broker in this transaction. In their brief they say that because of the parties' former dealings Lazerus was recognized as defendant's broker "to act for them (defendant) and as such his request to act for them would be absurd." We think this contention is without merit, especially where, as here, Lazerus was the avowed agent of the Diamond Match Company and sought the aid of Findlay without whose cooperation the subletting could not have been consummated. Plaintiffs admit that they were compensated by the Diamond Match Company. The consent of defendant to the subletting and the granting of an option to McCann-Erickson, Inc. were an indispensable and integral part of the transaction. Under these circumstances it would seem to us that it could not be reasonably inferred that Lazerus acting as the broker of the Diamond Match Company was also acting for defendant. Lazerus was ac-

114

ting in his own interest. And, since the interests of the parties were adverse, he could not represent the defendant without its knowledge and consent. There is no evidence tending to prove that Lazerus was led to believe that he would be compensated by defendant. The evidence discloses that Findlay repeatedly told Lazerus that defendant would not execute a short-term lease, and gave as one of the reasons that he did not want to pay a broker's commission.

In the recent case of *Whiston v. David Mayer Bldg. Corp.*, 337 Ill. App. 67, the plaintiff argued, as here, that Mayer, an attorney and the leasing agent of the defendant building corporation, knew that plaintiff was a real estate broker; that Mayer knew, or should have known, that when he gave permission to plaintiff to bring over a prospect that if a lease developed later plaintiff would expect to be compensated. This court said at page 72:

"There is no proof that when plaintiff was in Mayer's office he sought to have any express indication of Mayer's acceptance of an offer of brokerage. There is no proof from which we can infer that he discussed the lease from defendant's viewpoint or in its interest. An express contract is not necessary (*Goldstein v. Setka*, 195 Ill. App. 584; *Field v. Ingersoll*, 228 Ill. App. 457; 12 C. J. S. p. 32), but more has to be shown than appears here to establish an implied contract."

In the instant case the option was granted McCann-Erickson, Inc. to accommodate Lazerus and it favored Lazerus by enabling him to collect a commission, and gave McCann-Erickson, Inc. the "protection" it sought, but was a detriment to the defendant because defendant cannot compel McCann-Erickson, Inc. to exercise its option.

Under the facts and circumstances disclosed, Lazerus did not procure a tenant for defendant for the

space in question. What Lazerus procured was the consent of the defendant to an assignment of an existing lease of the Diamond Match Company to McCann-Erickson, Inc. containing an option for the 19-month period. This, therefore, did not constitute procuring a tenant within the settled doctrine of law which allows a broker a commission.

Since we are of the opinion that plaintiffs have failed to prove an express or implied contract of employment it is unnecessary to determine the other issues raised.

For the reasons given, the judgment is reversed.

*Judgment reversed.*

FEINBERG and KILEY, JJ., concur.