ARTHUR RUBLOFF & CO., Plaintiff-Appellant, *v.* DROVERS NATIONAL BANK OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division) No. 79-122

Opinion filed January 29, 1980.

Rodney C. Slutzky, of Slutzky & Slutzky, of Chicago, for appellant.

Law Offices of Kenneth S. Rosenblum, of Chicago (James A. Smith, of counsel), for appellee Harold Robbins.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Arthur Rubloff & Co., filed a two-count complaint in the circuit court of Cook County against defendant Drovers National Bank of Chicago (subsequently known as Drovers Bank of Chicago), a trustee holding legal title to certain real estate located in Chicago, and defendant Harold Robbins, the beneficiary of the trust. Recovery of a brokerage commission was sought for the sale of the real estate allegedly effectuated through the efforts of plaintiff's agent, Stanley Rubin, a licensed real estate broker. Motions to dismiss the complaint made by each defendant pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45) were granted by the trial court. Plaintiff appeals only that portion of the trial court's order dismissing the action as to defendant Robbins. Since the bank is not a party to this appeal, the designation, defendant, will hereinafter refer only to defendant Robbins.

Count I of the complaint alleged the following. On or about March 8, 1976, plaintiff through its agent, a licensed real estate broker, entered into

a written six-month exclusive listing agreement with the defendant for the sale of certain property which defendant owned and managed. About one month later, plaintiff's broker tendered to defendant an offer to purchase the property from Vincente V. Benig. The terms of the offer did not meet those specified in the listing agreement and the defendant rejected the offer. Just prior to May 2, 1977, about seven months after the exclusive listing agreement had expired, plaintiff's broker contacted the defendant and inquired whether his property was still for sale. Defendant replied that the property had not been sold and was still available for purchase. On or about May 2, 1977, plaintiff's broker tendered to defendant an offer of purchase from the same Vincente V. Benig. The defendant told the plaintiff's broker that the offer was acceptable, but that the tenant who was then occupying the property had an option to buy the property as a right of first refusal upon any acceptable offer of purchase made on the property. Defendant then tendered the offer to his tenant. The tenant exercised his option to purchase the property upon the same terms and conditions as the offer tendered by plaintiff's broker. Plaintiff alleged that it had performed all acts required of it by the exclusive listing agreement in procuring a purchaser for the property; that the property was sold to the tenant as a result of plaintiff's diligent efforts; and that defendant had refused to pay the brokerage commission to which plaintiff was entitled.

Count II of the complaint alleged that plaintiff had procured a ready, willing, and able purchaser for the property; that plaintiff performed such services without any written agreement with the defendant, but that defendant accepted these services and the benefits therefrom and knew plaintiff expected to be compensated; and that to deny plaintiff restitution would constitute an unjust enrichment to the defendant.

In granting defendant's motion to dismiss, the trial court found: (i) that count I of the complaint failed to state a cause of action in that there was no allegation that plaintiff procured a ready, willing, and able buyer acceptable to the defendant before the time his written employment contract expired pursuant to (Ill. Rev. Stat. 1977, ch. 111, par. 5737);[1] and (ii) that count II failed to state a cause of action in that plaintiff broker failed to produce a ready, willing, and able buyer unconditionally acceptable to the defendant, or that plaintiff broker was the procuring cause of the ultimate sale to the defendant's tenant.

---

[1] This provision of The Real Estate Brokers and Salesmen License Act provides, "No registrant shall obtain any written listing contract which does not provide for automatic expiration within a definite period of time. No notice of termination at the final expiration thereof shall be required. Any listing contract not containing a provision for automatic expiration shall be void."

I.

•◼◼ In accordance with the traditional rules regulating pleading in civil actions, the complaint of a real estate broker who brings an action to recover compensation must set forth facts which show that the broker is entitled to receive the compensation. A broker's right to recover compensation for his services must be based on his employment to render services for which the compensation is claimed, and he must have been employed by the person from whom compensation is sought. (5 Ill. L. & Prac. *Brokers* §72, at 553 (1953).) The relationship which exists between a broker and an owner of property is one of agency and is created by a contract of employment between the parties. *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 737, 365 N.E.2d 724; *Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 539, 132 N.E.2d 49.

•◼◼ Although the statute of frauds in Illinois requires that any contract for the sale of land must be in writing (Ill. Rev. Stat. 1977, ch. 59, par. 2), it makes no such requirement with regard to real estate brokers' contracts of employment. No particular form is required; all that is necessary is that the broker act with the consent of his principal, either by written instrument, orally, or by implication from the conduct of the parties. (*Bau v. Sobut; Doss v. Kirk; Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 323, 314 N.E.2d 361; *Graff v. Whitehouse* (1966), 71 Ill. App. 2d 412, 417, 219 N.E.2d 128.) A broker's contract, in whatever form, must possess the elements which are essential to contracts generally. There must be a meeting of the minds of the parties through offer and acceptance, the contract must be definite in its terms (*Bau v. Sobut*), and there must be sufficient consideration to support the contract (*O'Dea v. Throm* (1928), 250 Ill. App. 577, 582).

Plaintiff argues that under the facts as alleged in count I of the complaint, a meeting of the minds through offer and acceptance occurred when defendant told the plaintiff that the offer he had submitted was acceptable and that this acceptance was a ratification of the original written contract.

◼◼ According to the complaint, defendant's acceptance of the offer submitted by plaintiff was made conditional on his tenant's right of first refusal. Before acceptance creates a binding and enforceable contract, it must comply strictly with the terms of the offer. (*Brook v. Oberlander* (1964), 49 Ill. App. 2d 312, 317, 199 N.E.2d 613.) Where one accepts an offer conditionally or introduces a new term into the acceptance, no acceptance occurs, rather it becomes in effect a counterproposal which must be accepted by the offeror before a valid contract is formed. (*Brook v. Oberlander*, at 318; *Krause v. Buttino* (1954), 4 Ill. App. 2d 75, 78-79, 123 N.E.2d 337; Corbin, Contracts §82 (1963).) Because defendant's

tenant exercised his option to purchase, no acceptance of the offer presented by the plaintiff ever occurred.

Yet it is plaintiff's contention that once the defendant found the offer conditionally acceptable, his job as a broker was complete in that the property was in effect sold as it could make no difference to the defendant in monetary terms whether the plaintiff's client or the tenant became the ultimate purchaser, and that it was the submission of the offer which triggered the sale to the tenant. This argument assumes a finding that plaintiff was employed by defendant at the time the offer was submitted.

■■ We cannot agree with the plaintiff that defendant's conditional acceptance of the offer amounted to a ratification of the exclusive listing agreement which had formerly established an employment relationship between the plaintiff and the defendant. The exclusive listing agreement expired by its own terms, seven months prior to the time plaintiff submitted the offer to defendant. Thus at the time plaintiff submitted the offer to defendant, the employment relationship between the parties had lawfully terminated and plaintiff's acts were unauthorized.

●■ It is true that an alleged principal may become liable to compensate the broker for his unauthorized acts by subsequent ratification of the broker's acts. (*Carlson v. Marshall* (1912), 174 Ill. App. 438.) But it is necessary that the party seeking ratification allege the essential elements necessary for a finding that ratification has occurred. (*Farmers National Bank v. Trautwein* (1923), 228 Ill. App. 356, 362.) These elements include timely knowledge on the part of the alleged principal that the broker is participating in the transaction and assuming to act for him and some act or declaration, whether it be express or implied, which indicates his acceptance of the broker as his agent. (12 C.J.S. *Brokers* §§44, 63 (1938).) Ratification will not be implied from a principal's acts where at the time he was not fully informed of the facts, nor will it be implied from acts or conduct which are as consistent with an intention not to ratify as to ratify. *Farmers National Bank v. Trautwein*, at 361-62.

The only communication alleged to have been made between plaintiff and defendant after the listing agreement expired and prior to the submission of the offer was an inquiry by plaintiff as to whether defendant's property was still for sale and the response by defendant that his property was still available for purchase. No further conversation or specifics are alleged in the complaint. It cannot be said, based on this conversation, that defendant had full knowledge of the fact that plaintiff would conduct negotiations in his behalf. Plaintiff's inquiry could have been made for any number of reasons. At no time did plaintiff inform defendant that it intended to hold defendant to the terms of the prior agreement or charge him commission. Nor is it alleged that defendant ever requested the services of plaintiff subsequent to the expiration of the

listing agreement. Furthermore, because defendant's acceptance of the offer was only conditional, and the terms of the offer were substantially inferior to those in the prior agreement, which agreement among other things required a higher selling price and larger down payment, it is reasonable to conclude that the defendant's intention was not to ratify the prior listing agreement but to repudiate it.

## II.

### A.

● ▮ Based upon the allegations as alleged in count II of the complaint, plaintiff argues that an employment contract implied both in fact and in law existed. A contract implied in fact is one whereby a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor. (See generally Corbin, Contracts §§17, 18, at 38-43 (1963), and 12 Ill. L. & Prac. *Contracts* §4, at 186-87 (1955).) In the context of brokerage agreements, the owner of property must say so or do something tending to prove that he accepted the broker as his agent in the matter. An implied contract is said to exist in a situation where the owner knows that the broker is endeavoring to effect a sale and expects to receive compensation for his services, and where the owner encourages the broker to aid in the sale and leads the broker to believe that he would receive compensation. *Knotts v. Lake Shore & Michigan Southern Ry. Co.* (1912), 172 Ill. App. 550, 555; *Young v. Zimmer* (1965), 56 Ill. App. 2d 298, 305, 206 N.E.2d 281.

Plaintiff argues in effect that a contract of employment could be implied from the past relationship of the parties as evidenced by the expired listing agreement, and from defendant's failure to tell plaintiff not to make any efforts in his behalf or of his tenant's right of first refusal at the time plaintiff inquired about the property.

● ▮ As previously mentioned, seven months had passed from the time the listing agreement expired to the time plaintiff contacted defendant about the property. At that time, plaintiff simply asked whether the property was still available. No terms or conditions of sale were discussed. Plaintiff did not inform defendant he had an interested client or mention the subject of a commission in the event he brought in an acceptable offer. No acts or declarations made by the defendant at that time have been alleged from which it could be reasonably inferred that defendant actually solicited, requested, or in some manner encouraged plaintiff to continue in its efforts to procure a buyer for the property, or that any type of continuing relationship existed between plaintiff and defendant after the listing agreement expired. There is no showing that plaintiff sought to have any express indication of defendant's acceptance

of an offer of brokerage. Simply because plaintiff had acted as defendant's broker on a prior occasion, does not constitute grounds upon which it can be inferred that plaintiff represented defendant in the present transaction. (*Lazerus v. McCann-Erickson, Inc.* (1953), 349 Ill. App. 111, 114, 109 N.E.2d 923.) Because of the prior listing agreement, defendant could have reasonably believed he would not be obligated to pay plaintiff a commission until a similar contract was signed or at least an agreement to pay plaintiff a commission had been reached. Plaintiff was acting as a mere volunteer at the time he submitted the offer to the defendant, which offer defendant was free to accept or reject. (*Bennett v. H. K. Porter Co.* (1973), 13 Ill. App. 3d 528, 531, 301 N.E.2d 155.) Immediately upon the submission of the offer, defendant informed plaintiff of his tenant's right of first refusal and found the offer acceptable but subject to this condition. Plaintiff at that point was free to withdraw the offer or negotiate further with the defendant. By failing to do either, plaintiff took the chance that the tenant would exercise his right thereby causing the rejection of the offer. We note that the offer submitted by plaintiff, and as contained in the record, did not expressly provide for any type of commission to be paid by the defendant to the plaintiff in the event the offer was accepted. We cannot find, based upon this record, that defendant either expressly or impliedly consented to the employment of plaintiff as his brokerage agent.

*Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App. 3d 1060, 307 N.E.2d 445, the case upon which plaintiff relies, is distinguishable on its facts. In *Dickerson*, the broker received the seller's permission to show the seller's property to some clients. The broker then submitted an offer made by these clients to the seller and told him she was representing him. The seller rejected the offer, told the broker what amount he wanted to net from the sale, and suggested that this amount could be obtained if the broker reduced her commission. The broker informed the seller that a reduction in her commission was against company policy and discussed further details which the seller wanted included in the contract. The next day, the broker negotiated further with her clients and submitted a second offer to the seller which was about $500 less than the amount the seller desired to net. A few days later the seller negotiated directly with the broker's clients which resulted in a contract for the sale of his house. The court found that an implied employment contract existed between the broker and the seller, pointing out the facts, not present in the instant case, that the seller was aware of the continued negotiations made by the broker on his behalf, that the broker had notified the seller that she represented him, that the seller knew the broker expected a commission, and that the the broker did procure ready, willing, and able buyers who did in fact purchase the property.

## B.

 Lastly, plaintiff contends that a contract implied in law existed. A contract implied in law, also referred to as a quasi contract, differs from a contract implied in fact in that it exists from an implication of law that arises from the facts and circumstances, independent of an agreement or consent of the parties. (*Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9, 25, 197 N.E.2d 274; Corbin, Contracts §19, at 44-50 (1963).) A contract implied in law is equitable in its nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. (*First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 324, 270 N.E.2d 493.) Where there is an obligation or duty and a receipt of a benefit related to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay. This promise is fictitious and arises by implication of law wholly apart from usual rules relating to contracts. (*Town of Montebello v. Lehr* (1974), 17 Ill. App. 3d 1017, 1021, 309 N.E.2d 231.) It exists where there is a plain duty and a consideration. (*First National Bank v. Glenn.*) In a contract implied in fact the agreement defines the duty; in a contract implied in law the duty defines the contract. (*Beatrice Foods Co. v. Gallagher.*) As already pointed out where no contract of employment between a broker and the owner of property exists, either expressly or impliedly, the owner is under no plain duty or obligation imposed by law to compensate the broker. (See *Rees v. Spruance* (1867), 45 Ill. 308; compare *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, 888, 346 N.E.2d 382.) Here plaintiff was a mere volunteer when it submitted the offer to defendant and as such was not entitled by law to receive compensation.

The allegations of the complaint taken together with all reasonable inferences therefrom are insufficient to imply that a contract of employment between the plaintiff and defendant existed, without which plaintiff is not entitled to compensation. It is also to be noted that plaintiff is an experienced real estate brokerage firm in this community. With such experience goes an understanding of the requirements for properly handling real estate transactions so as to legally protect such interests as they might have in any transaction. Because of our conclusion, a determination as to whether or not plaintiff was the procuring cause of the sale would have no effect.

Based upon the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.