James C. O'BYRNE, et al., Plaintiffs,

v.

CHEKER OIL COMPANY, et al., Defendants.

No. 76 C 881.

United States District Court,
N. D. Illinois, E. D.

Dec. 4, 1981.

James P. Chapman, Merle L. Royce, Chicago, Ill., for plaintiffs.

Sherwin J. Malkin, Malkin & Gottlieb, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs are one present (Mangialardi) and four former independent gasoline dealers who now lease or previously have leased service stations from Cheker Oil Company ("Cheker"). They originally sued Cheker and Marathon Oil Company ("Marathon"), 50% owner of outstanding Cheker stock, claiming that defendants have:

(1) conspired to restrain trade in "the transporting, marketing, purchasing and selling of gasoline and related products" in violation of the Sherman Act, 15 U.S.C. § 1 (Count I);

(2) sold gasoline to plaintiffs "at different and discriminatory prices" in violation of Section 2(a) of the Robinson-Patman Act ("Act"), 15 U.S.C. § 13(a) (Count II); and

(3) conspired to interfere tortiously with plaintiffs' businesses (Count III).

This Court's September 4, 1981 memorandum opinion and order (the "Opinion") granted Marathon's motion for summary judgment because the Complaint sought "to implicate Marathon only by virtue of its alleged 'assistance' to or conspiracy with Cheker ..." (Opinion at 10) and there was no evidence to support a finding of conspiracy. At the time of the Opinion Cheker's summary judgment was in the course of briefing by the parties. For the reasons stated in this memorandum opinion and order, Cheker's motion (now having been fully briefed) is also granted.

### Counts I and III

■ Complaint Counts I and III assert a Cheker-Marathon conspiracy to deprive plaintiffs of rights protected by the federal antitrust laws and the state common law of tortious interference. Those claims necessarily fall with the Opinion's summary judgment in favor of the only alleged co-conspirator, Marathon. Without conspirators there can be no conspiracy. Accordingly summary judgment must also be entered in favor of Cheker on the same claims.

### Count II—Robinson-Patman Act

■ Complaint Count II, whose gravamen is *not* conspiracy, is not infected by the same deficiency as the other two counts. It relies on the acknowledged facts that:

(1) Cheker sells gasoline at *wholesale* through dealers such as plaintiffs, to whom it leases stations, and at *retail* through stations owned and operated by Cheker itself.

(2) Cheker sells to the wholesale customers like plaintiffs at higher prices than it charges its retail customers at its own stations.

Plaintiffs urge such differential pricing violates Act § 2(a).

They have simply misread—or not read—Section 2(a), which makes it:

unlawful for any person ... to discriminate in pricing between different purchasers ... where the effect of such discrimination may be substantially ... to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them ....

Here the persons who "received the benefit of such discrimination"[1] are Cheker's retail customers, the ultimate consumers of its gasoline. They are in competition with *no one*, let alone plaintiffs. They themselves have no "customers." Section 2(a) was not directed at conduct of the type complained of in Count II.

This same conclusion was simply put in von Kalinowski, 9 Antitrust Laws and Trade Regulation § 68.04[3] at 68–57 (emphasis in original):

The Robinson-Patman Act proscribes price discrimination only if injury to competition flows from that discrimination. Thus, a supplier who charges a different price to his distributors than he does to his consumer accounts will not stand in violation of Section 2(a) of that Act. This is because consumers, whether they are ultimate consumers or commercial users, *do not compete* with distributors in the resale of the particular goods.

As the Court of Appeals for the Tenth Circuit said in *American Oil Co. v. McMullin*, 508 F.2d 1345, 1353 (10th Cir. 1975), a case from which this Court's conclusion follows a fortiori:

A similar analysis applies to American's bulk distribution pricing. McMullin objects because consumer customers of the bulk plant received a more favorable price than did McMullin as a dealer. McMullin neither alleged nor proved that his dealer tankwagon price varied from that given other dealers. By definition the consumer customers would not be involved in the resale of the products which they purchased. Thus they were not in

---

1. Given the identity of the purchasers—consumers at the pumps of Cheker's service stations—plaintiffs could have substantial problems with proof that the purchasers "knowing-

ly" received the benefits of price differentials, also a statutory requirement. This opinion however assumes arguendo that requirement could be met.

competition with McMullin as a dealer, nor, obviously, could McMullin expect to compete with American for their business. Von Kalinowski, *supra*, at § 68.-04[3]. Therefore, in neither instance has McMullin demonstrated any adverse effect on competition resulting from the alleged price discrimination.

Plaintiffs may well suffer economically from Cheker's vertical integration and pricing arrangements.[2] Robinson-Patman however is not the weapon to aim at that target.

### Conclusion

There is no genuine issue as to any material fact and Cheker is entitled to judgment as a matter of law. Its motion for summary judgment is granted.

---

**2.** It is unnecessary to deal with the somewhat more sophisticated problem whether, had Cheker operated its stations through subsidiaries rather than directly, the same rule would apply. But even on that issue Professor Areeda says in his Antitrust Analysis ¶ 701(c) at 1056 (3d ed. 1981):

[I]s the subsidiary a purchaser (at a "low price") from the parent, such that an outsider buying from the parent appears to be the victim of a price discrimination? The courts increasingly respond with a negative answer, especially where the subsidiary is actively controlled by the parent.