**EURAMCA ECOSYSTEMS, INC., Plaintiff,**

v.

**ROEDIGER PITTSBURGH, INC., Roediger Anlagenbau GmbH & Co., Wilhelm Roediger GmbH & Co., Roediger AG, Techtransfer GmbH & Co., Pierre Ch. Frossard, Hans G. Konstandt and Walter Roediger, Defendants.**

No. 82 C 0307.

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1984.

Thielman & Jasen, Buffalo, N.Y., John Moran, Rock, Fusco, Reynolds & Heneghan, Chicago, Ill., for plaintiff.

James Hollihan, Manion, Alder & Cohen, Pittsburgh, Pa., Edward Fitzpatrick, Lord, Bissel & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff and counter-defendant Euramca Ecosystems, Inc. ("Euramca") sued Roediger Pittsburgh, Inc., Roediger Anlagenbau GmbH & Co., Wilhelm Roediger GmbH & Co., Roediger AG, Techtransfer GmbH & Co., Pierre Ch. Frossard, Hans G. Konstandt and Walter Roediger,[1] alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1, sections 2(a), 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and 13(e), and § 3 of the Clayton Act, 15 U.S.C.

§ 14, as well as pendent non-federal claims for breach of contract, breach of fiduciary duty, quantum meruit and interference with contractual relations. Defendant Roediger Pittsburgh filed a counterclaim against Euramca, seeking judgment on a loan dated June 30, 1980, and alleging the breach of another agreement between the parties. Jurisdiction for Euramca's claims is asserted pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

Presently before the Court is defendants' motion for partial summary judgment with respect to Counts I, III and IV.[2] For reasons set forth below, defendants' motion is granted in part and denied in part.[3]

In 1977, Euramca and Roediger AG entered into an agreement granting Euramca exclusive representation and distributorship in North America of "the Roediger program" for five years. Roediger Anlagenbau manufactures waste water decontamination equipment in West Germany, and Euramca has alleged that Techtransfer GmbH, Roediger AG and Wilhelm Roediger GmbH provide support services to Roediger Anlagenbau. The relationship between the parties ended in May of 1981. Euramca claims that defendants engaged in a variety of unlawful conduct during the course of the parties' relationship, which is set forth in greater detail below.

The Seventh Circuit has observed that "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir.1970). The basic purpose of the summary judgment procedure is to allow the Court to determine whether there are

---

1. On May 24, 1982, this Court adopted the Magistrate's Report recommending that defendants' motion to dismiss for lack of personal jurisdiction be granted as to defendant Hanns Roediger and denied as to the other corporate and individual defendants.

2. On November 2, 1982, this Court granted defendants' motion for partial summary judgment concerning the continued existence of a 1977 agreement between Euramca and Roediger AG.

We also granted Euramca's motion for partial summary judgment in part and denied it in part.

3. Also pending is Euramca's motion pursuant to Local Rule 2.31 for a determination that the instant case is related to case No. 82 C 6322, and that it be reassigned to this Court. Euramca's motion for relatedness is denied. It is so ordered.

any factual disputes which require resolution by trial. "[The] party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Any doubts as to the existence of material issues of fact must be resolved against the moving party. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.1961). However, while the non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), it must affirmatively set forth specific facts by affidavit or otherwise demonstrate the existence of issues which must be decided at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

### Count I

Euramca claims in Count I that defendants demanded that it accept different price terms, prices and credit terms than those offered to defendants' other customers. Defendants also allegedly sold, leased, discounted or contracted to sell their product to others on condition that they refrain from dealing with Euramca and engaged in vertical price fixing. This conduct, according to Euramca, constitutes a conspiracy in restraint of trade, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1,[4] and also violates §§ 2(a) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and 13(e), and § 3 of the Clayton Act, 15 U.S.C. § 14. Defendants have made a variety of arguments in support of their motion for summary judgment with respect to Count I, to which we now turn.

**4.** Section 1 of the Sherman Act, 15 U.S.C. § 1 provides, in relevant part, that

[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint

### Sherman Act Claims

Defendants' claims that the functional integration of all of the Roediger companies, which are asserted to be commonly owned in whole or part by Walter and Hanns Roediger, precludes a finding of an antitrust conspiracy among them. Moreover, they claim that there is no evidence that defendants' alleged conduct caused an actual or probable anticompetitive effect.

### A. Antitrust Conspiracy

■ Intra-enterprise conspiracy raises a number of difficult issues. It is settled that two separately incorporated subsidiaries within the same corporate family can conspire in restraint of trade. *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951). According to the Seventh Circuit, each case must be decided on its particular facts, taking into account

> the extent of the integration of ownership, whether the two corporations have separate managerial staffs ... the extent to which significant efficiencies would be sacrificed if they were required to act as two firms, their history, whether they functioned as separate firms before being partially integrated, and finally, the extent to which they may, acting as one, wield market power which they would not possess if viewed as separate firms.

*Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 726 (7th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980). The ultimate question is whether there is enough separation between the two entities to treat them under the law as two independent actors, and the answer is usually to be found in empirical evidence which is amenable to development at trial. *Independence Tube Corp. v. Copperweld Corp.,* 691 F.2d 310, 318 (7th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 3109, 77 L.Ed.2d 1365 (1983).

of trade or commerce among the several States, or with foreign nations, is declared to be illegal....

However, in this case, such empirical evidence may not be required at trial. Defendants point to a portion of Euramca's complaint, which emphasizes defendants' functional integration:

[u]pon information and belief that at all times hereinafter mentioned the defendants Walter Roediger and Professor Hanns Roediger dominated or controlled the officers and the board of directors of defendant Roediger Pittsburgh, Inc., defendant Roediger Hanau, defendant Roediger AG, defendant Wilhelm Roediger, GmbH & Co., defendant Techtransfer GmbH & Co. All of the acts of the individual defendants other than defendants Walter Roediger and defendant Professor Hanns Roediger, as officers and directors of the defendant corporations hereinbefore mentioned were done and performed under such domination or control.

Defendants also cite evidence that Wilhelm Roediger is a holding company owned by Walter and Hanns Roediger. Wilhelm Roediger owns all stock in Roediger Anlagenbau and 99% of the stock in Roediger Pittsburgh. Walter and Hanns Roediger also own a majority of shares in Roediger AG and all shares of Techtransfer GmbH. These firms in turn share a number of officers and directors,[5] and Roediger Anlagenbau, Roediger AG and Roediger Pittsburgh manufacture some of the same types of wastewater treatment equipment. Defendants further stress the absence of evidence that defendants compete with each other.

In response, Euramca asserts that factual issues preclude summary judgment upon this issue. It claims that this case involves three separate corporations all with the name Roediger, and that their accounts were segregated with monies being transferred from Roediger Pittsburgh to "the actual defendant supplier of machinery/parts." Euramca also cites testimony by Walter Roediger that the various Roediger companies are separately incorporated. Separate incorporation, however, does not automatically lead to a finding that a subsidiary and a parent firm are not a single entity. *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 727 (7th Cir.1979). Euramca's rather conclusory statements and evidence to support its position, in light of clear evidence of the functional and managerial integration of defendants, is not sufficient to find the multiple actors necessary for a § 1 conspiracy. Rather, we believe that defendants acted as a single entity and could not have conspired in violation of § 1. Defendants are thus entitled to summary judgment on Count I's claims of combination or conspiracy in restraint of trade.

### B. Anticompetitive Effect

Defendants additionally claim that the evidence presently before the Court fails to show an anticompetitive effect, as required by § 1 of the Sherman Act.[6] Under § 1 of the Sherman Act, absent allegations of *per se* violations, courts use the "rule of reason" to determine whether an antitrust violation has been stated. *Standard Oil v. United States,*

---

5. Walter Roediger was president of Wilhelm Roediger, Roediger Anlagenbau and Roediger AG and became president of Roediger Pittsburgh. Both Walter and Hanns Roediger are on the Board of Directors of all defendants' firms. Pierre Frossard is a director of Roediger AG and Roediger Pittsburgh. Hans Konstandt has been employed by Roediger Anlagenbau, Roediger AG and Techtransfer and has been a vice-president of Roediger Pittsburgh. None of the four individual defendants, moreover, could conspire with the corporate defendants or each other because of their roles as officers or directors of these firms. *University Life Insurance Co. v. Unimarc, Ltd.,* 699 F.2d 846, 852 (7th Cir.1983); *Harvey v. Fearless Farris Wholesale, Inc.,* 589 F.2d 451, 455 n. 7 (9th Cir.1979).

6. Euramca has alleged that defendants engaged in vertical price fixing by imposing resale prices on Euramca. Vertical price fixing is a per se violation of the antitrust laws, and proof of an anticompetitive effect is not required. *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 555 (7th Cir.1980). Defendants cite an admission in deposition testimony by Euramca's president that defendants did not impose price restrictions or rental restrictions upon Euramca. Euramca failed to offer evidence to controvert this evidence; defendants are therefore entitled to summary judgment with respect to this aspect of Count I.

221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). *See also Richard Hoffman Corp. v. Integrated Building Systems*, 581 F.Supp. 367 at 372–374 (N.D.Ill.1984). Anticompetitive effects or actual harm to competition must be shown to establish an antitrust cause of action. *Independence Tub Corp. v. Copperweld Corp.*, 691 F.2d 310, 322 (7th Cir.1982). We must therefore ascertain whether Euramca has alleged any anticompetitive effect arising from defendants' conduct, or whether we are able to infer such an effect. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1285 (7th Cir.1983).

Euramca complains of a variety of conduct in Count I, such as the imposition of different price terms and prices upon Euramca than upon defendants' other customers. This includes providing free monthly service to one such customer, sending a Roediger factory manager to visit one of the parties' customers and charging these expenses to Euramca's commission. Defendants also allegedly imposed different credit terms upon Euramca, such as requiring Euramca to post a payment bond or letter of credit, or paying one hundred percent of a purchase price by delivery date, or within fifteen days of invoice receipt.

■■■ The application of different credit terms does not itself constitute an unreasonable restraint of trade. *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 502 F.Supp. 637, 646 (D.N.J.1980). There is no suggestion, moreover, that different credit terms led to any actual or probable harm to competition, an essential element of a Sher-

man Act claim. Euramca's charge that defendants provided wastewater equipment customers with more favorable prices and services than Euramca amounts to a charge that defendants changed their distribution system. Changes in a distribution system alone are not prohibited by the Sherman Act. *Contractor Utility Sales v. Certain-Teed Products*, 638 F.2d 1061, 1075 n. 15 (7th Cir.1981). *See also University Life Insurance Co. of America v. Unimarc Ltd.*, 699 F.2d 846, 852 (7th Cir. 1983).

■ The Seventh Circuit has held, moreover, that a Sherman Act § 1 violation may be established if a defendant manufacturer refused to sell to the plaintiff distributor as a result of an agreement with a competitor of the plaintiff aimed at ending price competition between the distributors. *Alloy International Co. v. Hoover NSK Bearing Co.*, 635 F.2d 1222, 1224 (7th Cir.1980). No such allegations appear in Euramca's complaint. And any refusal to deal with Euramca by defendants, absent a showing of conspiracy, is not actionable under federal antitrust laws. *Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1070 (7th Cir.1978). Euramca has, in short, failed to controvert defendants' assertion that the conduct of which they are accused lacks any anticompetitive effect under the Sherman Act.

### Robinson-Patman Act Claims

■ Euramca also alleges that the conduct by defendants set forth in Count I violates §§ 2(a) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a) and 13(e).[7]

7. Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), provides in relevant part that [i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure,

destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

Section 2(e), 15 U.S.C. § 13(e), provides that: [i]t shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon

The Robinson-Patman Act prescribes price discrimination that causes injury to competition. von Kalinowski, 9 Antitrust Laws and Trade Regulation § 68.04[3]. In the present case, however, there is no allegation that price discrimination occurred among competitors. Euramca claims that defendants provided direct consumers with more favorable price terms, services and payment terms than Euramca. These consumers are not in competition with Euramca, who acted as a distributor for defendants. As a result, Euramca's allegations are not actionable under the Robinson-Patman Act. *Kirby v. P.R. Mallory & Co.,* 489 F.2d 904 (7th Cir.1973), *cert. denied,* 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *O'Byrne v. Checker Oil Co.,* 530 F.Supp. 70, 71 (N.D.Ill.1981).

### Clayton Act Claims

Finally, Count I avers that defendants sold, leased or discounted its machinery to customers on condition that they refuse to deal with Euramca, in violation of § 3 of the Clayton Act, 15 U.S.C. § 14.[8] Section 3 makes wrongful any contract for the sale of goods, or a fixed price or rebate on such a contract, on condition that the lessee or purchaser shall not use or deal in goods of a competitor of the lessor or seller, where the effect of such a sale, lease or contract would tend to create a monopoly in any line of commerce. *Lupia v. Stella D'Oro Biscuit Co.,* 586 F.2d 1163, 1172 (7th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979). The arrangement in question must also have the probable effect of substantially lessening competition or tending to create a monopoly. *Tampa Electric Co. v. Nashville Coal Co.,* 365 U.S. 320, 81 S.Ct. 623, 5

L.Ed.2d 580 (1961). The adverse effects, moreover, must occur in "any line of commerce"; this requires delineation of the relevant product market and geographic market. *Standard Oil Co. v. United States,* 337 U.S. 293, 299 n. 5, 69 S.Ct. 1051, 1055 n. 5, 93 L.Ed. 1371 (1949).

Defendants claim that because only one product is involved in this case—Roediger machinery—a showing of a probable adverse effect upon competition cannot be made. They also complain that Euramca has failed to allege a relevant product or geographic market, or any evidence concerning the market power that defendants possess. Deposition testimony of Euramca's president, however, indicates that Euramca may be able to present evidence that defendants' conditioning of the sale of their machinery upon a refusal to deal with Euramca had an adverse effect upon Euramca's spare parts sales. But in order to prove an antitrust violation, Euramca would also have to present evidence concerning product and geographic markets, defendants' market power and Euramca's position in the relevant market. As defendants point out, Euramca has presented no such information, nor argued that material factual issues preclude summary judgment on this point. Defendants, however, have not demonstrated the absence of material facts concerning this issue and concede that very little evidence is before the Court at present. Therefore, although Euramca may very well be unable to meet its burden of proof on its Clayton Act claim, we must deny summary judgment with respect to this claim at this time.

---

terms not accorded to all purchasers on proportionally equal terms.

**8.** Section 3 of the Clayton Act, 15 U.S.C. § 14, provides that

[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption or resale ... or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

## Count III

■ Count III avers that Euramca entered into two contracts with defendant Roediger Pittsburgh involving the sale of Roediger machinery for use in Millsboro, Delaware and Dubuque, Iowa. Euramca claims that it is prepared to perform these contracts, but that Roediger has refused to perform and seeks to impose new terms of payment. Defendants argue that the claims in Count III are moot, since the parties have agreed to payment terms for the Millsboro machinery, which has been delivered, and since the Dubuque purchase order was cancelled. Thus, neither Euramca nor defendants received the order for machinery. In response, Euramca claims that the Millsboro project is "an open file" and not moot, and that it is entitled to damages with respect to the Dubuque project for defendants' failure to pay it for a "post qualification test." Euramca's president has admitted that the Dubuque order was cancelled "because of Roediger's failure to be able to meet the process performance requirements in the test...."

Cases become moot when the issues they present are no longer "live" or the parties lack a legally cognizable interest in their outcome. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). The mere cessation of unlawful conduct, however, does not necessarily render a case moot. *Winokur v. Bell Federal Savings & Loan Association*, 560 F.2d 271, 274 (7th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). In Count III, Euramca seeks specific performance of two contracts. Count III, however, raises no live issues. One contract has been performed; the other cannot be performed. The equitable relief which Euramca seeks is thus not available with respect to either contract, and defendants are therefore entitled to summary judgment on Count III.

## Count IV

In Count IV, Euramca asserts that defendants owe it monies representing labor and services performed by it on defendants' behalf between 1977 and 1980. This claim sounds in quantum meruit. Defendants argue that because Euramca had no expectation of being paid by defendants at the time these services and expenses were incurred, and also because an express contract existed between the parties, Euramca cannot recover under a quantum meruit theory.

■ In Illinois, an implied-in-law contract arises independently of any agreement or consent by the parties. *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill.App.3d 867, 875, 36 Ill.Dec. 194, 198, 400 N.E.2d 614, 620 (1st Dist.1980). Such contracts are equitable in nature and are premised upon the notion that one should not be enriched unjustly at the expense of another. *A.H. Gruetzmacher & Co. v. Massey-Ferguson, Inc.*, 512 F.Supp. 194, 199 (N.D.Ill.1981). Quantum meruit relief, however, may not be obtained

> where the benefit is conferred officiously or gratuitously, the services were rendered in order to gain a business advantage, the plaintiff did not contemplate a fee at the time the services were rendered, or the defendant could not have reasonably believed that the plaintiff expected a fee.

*Plastics & Equipment Sales v. DeSoto, Inc.*, 91 Ill.App.3d 1011, 1017, 47 Ill.Dec. 487, 488, 415 N.E.2d 492, 493 (1st Dist. 1980). *See also, Lirtzman v. Fuqua Industries*, 677 F.2d 548, 553 (7th Cir.1982); *Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir.1973). Moreover, as a general rule, quasi-contractual claims such as quantum meruit cannot arise when a contract exists between the parties concerning the identical subject matter upon which the quasi-contractual claim rests. *Industrial Lift Truck v. Mitsubishi International Corp.*, 104 Ill.App.3d 357, 361–62, 60 Ill.Dec. 100, 103, 432 N.E.2d 999, 1002 (4th Dist.1982).

Euramca has not offered evidence to rebut defendants' assertion that Euramca did not expect to be paid for the labor and services at issue at the time they were performed. Defendants have offered the

deposition testimony of John Drozda, Euramca's president, which indicates that Euramca never contemplated a fee at the time the services in question were rendered.[9] The existence of a representation agreement between Euramca and defendant Roediger AG, beginning in 1977, the validity of which Euramca does not challenge, would also appear to preclude the assertion of a quantum meruit claim for labor and services rendered during this period. *Protestant Hospital Builders Club v. Goedde*, 98 Ill. App.3d 1028, 1031, 54 Ill.Dec. 399, 402, 424 N.E.2d 1302, 1305 (5th Dist.1981). Defendants are therefore entitled to summary judgment with respect to Count IV.

Accordingly, defendants' motion for summary judgment is granted in part and denied in part. Defendants are entitled to summary judgment with respect to Counts III, IV and the Sherman Act and Robinson-Patman Act claims in Count I. Their motion for summary judgment as to Clayton Act claims in Count I is denied. It is so ordered.

**9.** The relevant portions of Mr. Drozda's deposition provide as follows:

Q. With respect to these various hours that are set forth on this exhibit, at the time that they were being expended, did you as the Chief Executive Officer of Euramca have an intention or expectation of eventually billing Roediger for these hours?

Q. When did this intention arise?

A. After the Directors' meeting.

Q. So as far as all the hours before August 2 of 1980, there was no intention or expectation of ever recouping those amounts from Roediger, is that right, referring to the hours?

A. That's right.

Q. Now how about the expenses that are set forth on this handwritten ledger, is the same true for those? At the time that you were incurring these expenses up until the August of 1980 shareholders' meeting, did you as the Chief Executive Officer of Euramca have any intention or expectation of eventually billing those expenses to Roediger?

A. There would be no need to.

Q. Why was that?

A. As long as we were able to operate under our distributor contract.

Q. So the answer to that question is, no?

